Andrew ENGRAM *v.* STATE of Arkansas

CR 99–928 15 S.W.3d 678

Supreme Court of Arkansas
Opinion delivered May 4, 2000
[Petition for rehearing denied June 8, 2000.]

*John B. Plegge*, Judge;

*William R. Simpson, Jr.*, Public Defender; *Bret Qualls* and *Tammy Harris*, Deputy Public Defenders, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. Appellant Andrew Raymond Engram appeals his judgment of conviction and sentence of death for the June 5, 1997, capital murder and rape of Laura White, a security guard working at Sears in North Little Rock on the date of the offense. Appellant's execution date was set for June 5, 1999, by the trial court. That date was stayed by order of this court on May 27, 1999, pending appeal.

Appellant filed a timely motion for new trial, which was denied by the trial court. Following the denial of the motion for new trial, appellant filed a notice of appeal of his conviction and sentence. Appellant raises the following six points on appeal:

1) The evidence was insufficient to sustain the verdict;

2) The court denied appellant's constitutional right to confrontation by refusing to allow him to cross-examine the medical examiner about previous disciplinary action;

3) The court erred in overruling appellant's objection to a police officer's testimony that he did not believe appellant was truthful;

4) The overlap between the capital-murder and first-degree murder statutes created an unconstitutional risk that the death penalty was imposed in an arbitrary and capricious manner;

5) The trial court erred in submitting as three separate aggravating circumstances under Ark. Code Ann. § 5-4-604(3) (Repl. 1997) appellant's three prior convictions for violent offenses;

6) The trial court erred in admitting victim-impact evidence because such evidence is irrelevant under Arkansas sentencing procedures to the considerations for imposition of the death penalty.

We are not persuaded that any of these issues has merit, and we affirm.

*I. Sufficiency of the Evidence*

The appellant challenges the adequacy of the DNA-identity evidence introduced against him at trial. He contends that DNA evidence alone does not constitute sufficient evidence to support his conviction. At trial, the State's DNA expert testified that the probability that the semen recovered from the victim belonged to a person other than the appellant was one in 600 trillion. The State contends that the appellant failed to preserve this argument on appeal, as he did not make a specific objection to the sufficiency of the DNA evidence below, but rather made a general objection to the sufficiency of the evidence in that he felt the State had failed to "identify" him as Ms. White's killer.

■ We have held that in order to preserve a challenge to the sufficiency of the evidence, a defendant must make below the specific challenge he seeks to make on appeal. *E.g., Conner v. State*, 334 Ark. 457, 464, 982 S.W.2d 655, 658 (1998). When looking at the record in this case, it is apparent that appellant actually did *not* make a specific objection to the sufficiency of DNA evidence alone to prove identity. Further, appellant has cited no authority which supports his contention that DNA evidence alone *cannot* sufficiently prove identity.

■ As a general rule, where it is not apparent without further research that the argument is well-taken, we do not consider such arguments on appeal. *Matthews v. State*, 327 Ark. 70, 74, 938 S.W.2d 545, 547 (1997). Still, although appellant failed to offer any authority or convincing argument in support of his position that the DNA evidence alone was insufficient to prove identity to support his rape and capital-murder convictions, given that the appeal involves a sentence of death, we will address the merits of appellant's argument. *See Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999).

■■ When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *See Sublett v. State, supra; Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.* Notably, the evidence may be either direct or cir-

cumstantial. *See Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320, (1991). Circumstantial evidence can provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Gillie*, 305 Ark. at 301, 808 S.W.2d at 322 (citing *Trotter v. State*, 290 Ark. 269, 719 S.W.2d 268 (1986)).

■ The appellant has complained that the DNA evidence was insufficient, alone, to prove his identity. Appellant contends in support of his argument that the DNA laboratory was not certified and that this lack of certification significantly weakened the credibility of the results. Such a complaint, which actually has little to do with the sufficiency of the evidence and more to do with the weight of said evidence, is actually a dispute over credibility. In regard to questions of credibility, on appeal, this court views the evidence in the light most favorable to the State, recognizing that it is the jury's province to resolve credibility disputes. *See, e.g., Wilson*, 332 Ark. 7, 11, 962 S.W.2d 805, 807. This principle is no less applicable to DNA evidence, when its credibility is being challenged. *See Johnson v. State*, 326 Ark. 430, 446–47, 934 S.W.2d 179, 186–87 (1996), *cert. denied*, 520 U.S. 1242 (1997).

■ Next, appellant wrongly asserts that the DNA evidence was the sole proof of his identity as the perpetrator. His assertion seems to ignore two additional pieces of evidence introduced at trial that at least contribute to proof of his identity. The first is the state trooper's eyewitness encounter with the appellant at the crime scene on the very night of the crimes; and the second is the appellant's implausible explanation for being there, given that his time card from his job at Luby's proved that he did not work that evening. Although circumstantial proof, both are evidence of identity and, in turn, guilt. *See, e.g., Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999) (proximity testimony); *Remeta v. State*, 300 Ark. 92, 777 S.W.2d 833 (1989) (same); *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997) (false explanation of suspicious circumstances). Further, the state presented circumstantial hair and fiber evidence linking the appellant to the crime. While the DNA evidence is substantial standing alone, it is undeniably sufficient when considered with the additional circumstantial evidence adduced at trial.

■ This court has, since *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996) (holding that DNA evidence is no longer con-

sidered "novel scientific evidence"), consistently accepted DNA evidence as proof of guilt. *See, e.g., Lee v. State*, 326 Ark. 229, 931 S.W.2d 433 (1996). The appellant's challenge to the sufficiency of the DNA evidence suggests that these authorities must be rejected; however, he· has failed to provide any compelling reason for so doing.

Finally, in an attempt to prove that the evidence was insufficient to support his convictions, the appellant points to the *absence* of certain evidence such as fingerprint evidence, and to the inconclusiveness of other evidence linking him to the crimes. In so doing, he actually demonstrates conflicts in the proof for the jury to resolve — that is, to consider and reject or accept. *See, e.g., Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999).

■ Based on the above, viewing the. evidence in a light most favorable to the State, we hold that substantial evidence exists to support the appellant's rape and capital-murder convictions.

*II. Cross-Examination Regarding Previous Disciplinary Action against the Medical Examiner*

■■ We have held that a circuit court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of issues or interrogation that is only marginally relevant. *See Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996). This court will not disturb the trial court's discretion in such matters unless that discretion was abused. *Id.* To determine whether cross-examination restrictions infringed upon an appellant's confrontation rights, we look to the record as a whole to determine if the restrictions imposed created a substantial danger of prejudice to the appellant. *Id.* Such prejudice is not presumed, but must be demonstrated. *Id.*; *see also Marta v. State*, 336 Ark. 67, 80-81, 983 S.W.2d 924, 929 (1999).

In this case, prior to trial, the trial court ruled that the appellant could not cross-examine the medical examiner, Dr. Sturner, concerning an allegation of supervisory misconduct in a previous position he held in another state. The appellant apparently sought to discredit the State's DNA evidence by suggesting that the samples taken from the victim for DNA testing were in some way wrongly collected, at least in part, due to the previous allegation of miscon-

duct against Dr. Sturner for allegedly failing to adequately supervise his agents during certain forensic autopsies.

The appellant does not dispute that the swabs which matched his DNA were taken from the victim, nor does he dispute that they were taken in a way that caused them to yield a false match to him. In other words, while Dr. Sturner's presence at, and supervision of, the swab collection in this case might have some relevancy, the appellant does not explain how it would have aided in casting any doubt upon the validity of the DNA evidence. Further, he fails to explain how his proposed cross-examination of Dr. Sturner about his supervision in *other* cases in another state would have done so. In the absence of a chain-of-custody argument, which the appellant has not made, it is impossible to discern what fact of consequence would have been made more or less probable by an allegation of previous supervisory misconduct on Dr. Sturner's part.

Moreover, appellant was not prevented by the trial court from conducting *any* cross-examination of Dr. Sturner. In fact, he cross-examined both Dr. Sturner and the technician who collected the swabs about the circumstances of the swab collection and the former's supervision of the latter. Yet, even having done so, he still fails to explain its relevancy for casting doubt upon the DNA evidence.

In short, appellant has failed to demonstrate any prejudice to his confrontation rights by his preclusion from questioning Dr. Sturner about previous allegations of supervisory misconduct in another state. We hold, therefore, that the trial court did not abuse its discretion in this regard.

### III. Police Officer's Testimony Regarding Truthfulness of Appellant

At trial, State Trooper Mike Dawson testified that on the night in question, he arrived at the Sears parking lot around midnight to find the appellant walking near the tent where the victim's body was later found. Because of the late hour, Trooper Dawson sought to determine appellant's reason for being there. Appellant told Dawson that he had just gotten off work at Luby's and was waiting for a ride. Dawson testified that he knew the cafeteria closed at 8:00 p.m. He added that while he assumed Luby's employees might have to work later than eight o'clock, he "didn't feel like [Engram] was being truthful." Counsel for appellant immediately objected to Dawson's

observation about appellant's truthfulness and moved for a mistrial, arguing that such testimony was improper. The prosecutor insisted that said comment was unsolicited and that, at any rate, it could be admitted as a present sense impression. The trial court overruled appellant's objection and denied his motion for a mistrial. Appellant contends that this ruling was in error.

We have held that a trial court has wide latitude in its discretion to grant or deny a mistrial and will not be reversed absent an abuse of that discretion. *See, e.g., Ashley v. State*, 310 Ark. 575, 840 S.W.2d 793 (1992). Moreover, a mistrial should be granted only where an admonition could not cure any prejudice. *Id.* Finally, this court will not reverse in the absence of a showing of manifest prejudice. *See Marta*, 336 Ark. at 77-78; 983 S.W.2d at 929. Under these standards, the trial court clearly did not err.

First, the State was able to demonstrate through other evidence, appellant's timecard from his employer (Luby's), that the appellant in fact *was* lying when he told Trooper Dawson that he had just gotten off work at Luby's. The timecard revealed that appellant had not worked at all on the evening in question. Under these circumstances, it was not error to deny the appellant a mistrial for the trooper's unsolicited remark about the appellant's level of truthfulness. *See Ashley*, 310 Ark. at 578, 840 S.W.2d at 794 (no error found from the denial of a mistrial in similar circumstances where the defendant's remarked-upon truthfulness was later proven by other evidence). Further, if the trooper's remark was prejudicial at all, an admonition would have cured any prejudice. *See, e.g., Aaron v. State*, 312 Ark. 19, 23-24, 846 S.W.2d 655, 657 (1993). However, the appellant did not seek an admonition. We have held that we will not reverse a trial court for failing to do what it was never asked to do. *See Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999); *Gooden v. State*, 321 Ark. 340, 902 S.W.2d 226 (1995).

The appellant has failed to demonstrate any prejudice suffered as a result of Trooper Dawson's unsolicited remark. The appellant does contend that the jury, during deliberation, asked for a transcript of the trooper's testimony, and that this fact, in and of itself, proves that the jury was placing critical importance on his testimony. However, when researching the record, it was discovered that the jury had contemporaneously asked for a transcript of Dr. Sturner's testimony. Therefore, the appellant's argument that the

jury was placing critical importance on the testimony of one wit-
ness, Trooper Dawson, loses any persuasive value it may have other-
wise had. We hold that there was no abuse of discretion on this
point.

*IV. Overlap between Capital-Murder and First-Degree Murder Statutes*

 Appellant contends that the overlap between the capital-
murder and first-degree murder statutes creates an unconstitutional
risk that the death penalty was imposed in an arbitrary and capri-
cious manner. The appellant concedes that this court has resolved
this issue unfavorably to his position in numerous cases. We have
most recently done so in *Carmichael v. State*, 340 Ark. 598, 12
S.W.3d 225 (2000). This court has found no overlap problem when
analyzing the capital and first-degree murder statutes, emphasizing
that it is impossible to avoid the use of general language in the
definition of offenses. *See, e.g., Jones v. State*, 328 Ark. 307, 942
S.W.2d 851 (1997).

The appellant suggests that this court has not clearly addressed
the overlap question, citing *Ruiz v. State*, 273 Ark. 94, 617 S.W.2d 6,
*cert. denied*, 454 U.S. 1093 (1981), *Beck v. Alabama*, 447 U.S. 625
(1980), and *Roberts v. Louisiana*, 428 U.S. 325 (1976). However, this
suggestion by appellant is refuted by his own citation to *Ruiz*, in
which this court clearly explained why any overlap does not run
afoul of the principles of *Beck* and *Roberts*. In *Ruiz*, we explained
that

> [O]ur statutory scheme is not flawed as were those of Alabama and
> Louisiana. Under Alabama law the jury could not consider lesser
> included offenses in capital crimes and was limited to either an
> acquittal or a conviction, in which case death was mandatory, and,
> hence the jury was deprived of the "third option" of a lesser
> punishment, which the United States Supreme Court held to be
> unconstitutional. In *Roberts*, Louisiana's statutory scheme was
> found to be deficient. The jury in Louisiana was always instructed
> as to lesser included offenses (even where the evidence failed to
> support such a finding), the error of Louisiana's procedure being
> that if the jury found both elements of first degree murder, i.e.,
> that the accused had a specific intent to kill while engaged in a
> felony (in this case robbery) the death penalty was mandatory. In
> contrast, our scheme binds the jury in no such fashion, as it is free
> to impose life without parole in preference to death, notwithstand-

ing a finding of guilt on capital felony murder charges. Moreover, if the evidence is such that the jury is instructed on lesser included offenses, it may lessen the punishment accordingly as its further option.

*Ruiz*, 273 Ark. at 106, 617 S.W.2d at 13.

Finally, the appellant's argument is predicated on a false presumption — that a jury is making (or must make) a choice between life and death at the guilt phase — which is, as evidenced by the *Ruiz* case, not true under the Arkansas capital-punishment scheme. This presumption appears to be founded on the appellant's misinterpretation of the underlying rationale of *Beck*. The point of *Beck*, as we have noted previously, is to ensure that a jury is not given a choice only between a conviction for which the defendant must receive the death penalty or an acquittal. *See Kennedy v. State*, 338 Ark. 125, 129-30 & n.1, 991 S.W.2d 606, 609-10 & n.1 (1999) (*per curiam*).

■ The Arkansas capital-punishment scheme avoids such an arbitrary and capricious choice, as the *Ruiz* court noted, because the jury may ultimately impose a life sentence in preference to death at the penalty phase, even if it finds a defendant guilty of the capital crime. *Ruiz*, 273 Ark. at 106, 617 S.W.2d at 13; *see also Wilson v. State*, 271 Ark. 682, 684-86, 611 S.W.2d 739, 740-41 (1981); *Camargo v. State*, 327 Ark. 631, 642, 940 S.W.2d 464, 467 (1997) (explaining that any overlap between statutes does not create a vagueness problem because constitutionally required narrowing is performed at the penalty phase).

■ Concisely stated, the fact that the substantive homicide statutes may reflect some overlap in charging at the guilt phase of capital trials simply does not implicate the principles of *Beck*; we have already addressed and settled this issue in numerous previous cases.

*V. Prior Convictions as Aggravating Circumstances*

The State proved that the appellant had committed three prior felonies which involved the use or threat of violence to another person; and, the jury was charged by the trial court that it could find an aggravating circumstance for each of those prior felonies,

which it did. The appellant now disputes that the jury could be so instructed. Although he concedes that he did not raise this issue below, he alleges that he may do so for the first time on appeal because it concerns a matter essential to the jury's death-penalty deliberations. The State contends that the jury's death-penalty deliberations were correct and that they could not have been affected by any alleged mislabeling of the appellant's three prior violent felonies as three aggravating circumstances rather than as three felonies supporting one aggravating circumstance. We agree.

Clearly, the jury did not consider an *invalid* aggravator or fail to correctly complete the forms it was given. Moreover, the appellant does not even dispute that the jury *could* consider all of his prior violent felonies under Ark. Code Ann. § 5-4-604(3). Rather, he only denies that they could each be described in the instructions as a separate aggravating circumstance. He does not explain why they could not be so described, except to say it is "improper and unprecedented."

While appellant suggests that previous cases involving defendants with multiple prior violent felonies involved single aggravating-circumstance submissions, other cases suggest the opposite. *See, e.g., Duncan v. State*, 291 Ark. 521, 726 S.W.2d 653 (1987) (discussing claim of error in using previous homicides as aggravating circumstances under former version of statute). In fact, in *Lee v. State*, 327 Ark. 692, 942 S.W.2d 231, *cert. denied*, 522 U.S. 1002 (1997), we noted that the State had submitted three prior felonies and pecuniary gain as aggravating circumstances. We described the latter as the "fourth aggravator" and noted that the jury found "all four" aggravating circumstances — implying that each of the violent felonies was a separate aggravating circumstance under Ark. Code Ann. § 5-4-604(3). Notwithstanding, none of the cases prior to this case have directly decided the question.

The appellant's argument amounts to a distinction without a difference, in that either way it is described — whether it be as one aggravating factor or three separate factors — the jury is still able to consider the existence of three prior felony convictions. This fact is undisputed. As we have previously explained in concluding that a prior violent felony can have occurred *after* the capital crime, the *purpose* of the aggravator is to advise the jury of a defendant's propensity to violence — that is, to strike again. *See*

*Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994), *cert. denied*, 513 U.S. 1162 (1995).

██ The fact is that the appellant had "struck" on three previous occasions, and his jury was instructed consistently with this purpose — that each violent felony was an aggravating circumstance of his capital crime. The plain purpose of the aggravator itself sufficiently answers the appellant's hyperbolic concern that the State might "pad" the number of aggravating circumstances. Again, it amounts to a distinction without a difference, as the jury could obviously, and indisputably, consider each of the prior violent felonies, either way; therefore, the appellant is unable to demonstrate that the separation of the priors as aggravators in any way prejudiced him. As such, we hold that it was not error for the trial court to allow each prior felony conviction to be labeled as a separate aggravating circumstance.

### VI. Admission of Victim-Impact Evidence

As in point IV, above, the appellant again concedes that this court has resolved *this* issue unfavorably to his position in previous cases, as well. Notwithstanding, he contends that this court should declare victim-impact evidence irrelevant under the Arkansas capital-sentencing scheme, relying upon the views of the dissenting justices in *Noel v. State*, 331 Ark. 79, 95–102, 960 S.W.2d 439, 447–51 (1998) (NEWBERN, IMBER, and THORNTON, JJ., dissenting). Appellant's argument is not persuasive for several reasons.

██ First, appellant's argument fails to meet the high burden required to show that the adherence to the principle of *stare decisis* in this matter is manifestly unjust or patently wrong, *see, e.g., McGhee v. State,* 334 Ark. 543, 546, 975 S.W.2d 834, 835 (1998), particularly in light of the fact that we rejected this argument only two years ago in *Noel. See also Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000).

██ Next, the General Assembly has unequivocally declared that victim-impact evidence is relevant to a jury's determination of the appropriateness of the death penalty. *See* Ark. Code Ann. § 5-4-602(4) (Repl. 1997); *Noel*, 331 Ark. at 93–94, 960 S.W.2d at 447. The appellant argues that § 5-4-603 (Repl. 1997) has no place in its required finding for victim-impact evidence. This argument is mis-

placed. The fact that the jury is not called upon to find that victim-impact evidence existed says nothing about whether such evidence is relevant to its deliberations. Simply put, a jury may consider victim-impact evidence without making any findings about it, just as a jury might consider motive in returning a general verdict. In both circumstances, the jury may consider evidence relevant to the ultimate issue it must decide, without being required to return an express finding about that evidence.

Only through the legislature could the consideration by capital juries of victim-impact evidence be eliminated from the capital-sentencing scheme. This court has rejected an invitation to do so in *Lee, supra,* where we explained that, due to the virtually unlimited relevancy of mitigating evidence, "the State could legitimately conclude that the impact of the murder on the victim's family is relevant to the jury's decision as to whether to recommend that the death sentence be imposed." *Lee,* 327 Ark. at 703, 942 S.W.2d at 236; *see also Noel,* 331 Ark. at 92, 960 S.W.2d at 446 (quoting *Lee*).

The victim-impact evidence admitted in this case was precisely the type discussed in *Payne v. Tennessee,* 501 U.S. 808 (1991), and determined to be appropriate by the General Assembly in adopting § 5-4-602. *See, e.g., Nooner v. State,* 322 Ark. 87, 108-09, 907 S.W.2d 677, 688-89 (1995), *cert. denied,* 517 U.S. 1143 (1996). As in *Nooner,* the testimony at issue in this case was the testimony from family members of the victim, her parents, who are certainly persons "profoundly impacted by [her] death." *Nooner,* 322 Ark. at 109, 907 S.W.2d at 689.

██ In short, the admission of victim-impact evidence in this case was consistent with federal and state law and was properly allowed.

*VII. Rule 4-3(h) Compliance*

In accordance with Ark. Sup. Ct. R. 4-3(h) (1998), the record has been reviewed for adverse rulings objected to by the appellant but not argued on appeal, and no reversible errors were found.

Affirmed.