Jerry James ELLIS  *v*.  STATE of Arkansas

CR 05-552                                    222 S.W.3d 192

Supreme Court of Arkansas
Opinion delivered January 12, 2006

*Knutson Law Firm*, by: *Gregg A. Knutson*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Jerry James Ellis appeals the jury verdict and order of the Pulaski County Circuit Court convicting him of rape, burglary, and terroristic threatening. As a result of his convictions, and pursuant to the trial court's finding that he was a habitual offender, Appellant was sentenced to life imprisonment on the rape charge, fifteen years' imprisonment on the terroristic threatening charge, and forty years' imprisonment on the burglary charge. On appeal, he raises three arguments for reversal: that the trial court erred when it failed to (1) grant his motion for directed verdict on the rape charge when there was insufficient evidence of "forcible compulsion"; (2) grant his motion for directed verdict on all charges against him when there was insufficient evidence as to the identity of the alleged attacker; (3) suppress the pretrial identification of the appellant when the procedure used for conducting the identification involved a photograph of only one person, the person making the identification was not the victim, and the detective did not retain the photograph used for identification purposes. Because Appellant received a life sentence, our jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

S.A., the victim, is a fifty-six-year-old woman who has serious problems with her legs and, consequently, has trouble getting around. At around 7:30 a.m. on December 24, 2002, S.A. heard a knock at her Lynn Lane apartment door. When she answered the door, a black male, later identified as Jerry James Ellis, asked to use her phone to call a cab. S.A. testified that when she let him in, he grabbed her by the throat, took her into her bedroom, and threw her on the floor. She screamed for one of her neighbors, but he told her to "shut up" and that "he would kill [her]" if she did not. She explained that she was scared to death. He then took off both of their clothes. She explained that while he was taking off his clothing, she was on the floor and could not get up because of her legs. After he finished undressing them both, he forcibly had sex and oral sex with S.A. She testified that "He just, he stuck — He stuck it in." After he was finished, he went into the bathroom and cleaned himself up. Then, he helped up S.A. and told her to clean herself up. At that time, S.A. noticed she was bleeding. The man then wiped things down in the apartment and

asked to use the phone again. Before leaving, he told her that if she called the police, "I will come back to get you or one of my friends will."

After he left her apartment, she went to her window and motioned for her neighbor, Pamela Holland, to come over. S.A. told Holland that she had been raped, and Holland convinced S.A. that she needed to call the police. After the police came, they told her that she needed to go to the hospital. An ambulance arrived and took S.A. to the hospital. At the hospital, S.A. was examined by Lori Farmer, a registered nurse. Nurse Farmer testified that she spoke to S.A. about the rape and performed the rape exam. After the exam was finished, it was sent to the police.

Another neighbor, Lindsey Carter, testified that he was in his apartment when he heard an EMT vehicle and police vehicles outside his window. He explained that when he stepped outside and asked other neighbors what had happened, he learned that S.A. had been hurt. At that time, Carter approached the police to tell them about an earlier encounter with a suspicious man. Carter explained that earlier that morning he was approached by a man, who asked him questions about where a white lady stayed and pointed in the direction of S.A.'s apartment. Carter said that he told the man he did not know, but that he knew the man was pointing in S.A.'s direction. He told police that he could identify the man if he saw him again. A few days later, Officer David Pettit visited Carter and showed him a picture of Appellant's identification card. Carter identified the man in the picture as the man that approached him the morning of the rape.

Additionally, Mary Robnett, a forensic biologist at the Arkansas State Crime Lab, testified that she performed DNA analysis of the rape kit on November 24, 2003, using known samples from S.A. and Appellant. She stated that she was able to make a match of the DNA from Appellant to the DNA found in S.A.'s underwear and vagina.

At the close of the State's case, Appellant moved for a directed verdict. The trial court denied this motion. Appellant then testified that he had visited S.A. between 9:00 p.m. and 10:00 p.m. on the night of December 23, 2002. He claimed that S.A. owed him some money, but that she did not have any. Because she did not have the money, he stated that he exchanged consensual sex for "dope," as he had on other occasions with S.A. Appellant claimed that this was the reason that his DNA was found, but that

he did not talk to or visit Carter or S.A. on December 24th. After Appellant's testimony, he renewed his motion for directed verdict. This was again denied. The jury then returned a verdict finding Appellant guilty of rape, residential burglary, and terroristic threatening. This appeal followed.

## I. Forcible Compulsion

Appellant argues that the trial court erred in denying his motion for a directed verdict on the rape charge. Specifically, he claims that there was insufficient evidence of "forcible compulsion" as required by Ark. Code Ann. § 5-14-103(a)(1)(A) (Supp. 2001).

This court has repeatedly held that motions for a directed verdict are treated as challenges to the sufficiency of the evidence. *Hall v. State*, 361 Ark. 379, 206 S.W.3d 830 (2005); *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003); *Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). The test for determining the sufficiency of the evidence is whether substantial evidence, direct or circumstantial, supports the verdict. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* Circumstantial evidence can be used to provide the basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000), *cert. denied*, 531 U.S. 1081 (2001). On appeal, this court reviews the evidence in the light most favorable to the appellee and considers only the evidence that supports the verdict. *Id.*

As noted above, Appellant was convicted of rape by forcible compulsion. Section 5-14-103(a)(1)(A) states: "A person commits rape if he or she engages in sexual intercourse or deviate sexual activity with another person: . . . By forcible compulsion." " 'Forcible compulsion' means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." Ark. Code Ann. § 5-14-101(2) (Supp. 2001). This court has defined physical force as " 'any bodily impact, restraint or confinement, or the threat thereof.' " *Sublett*, 337 Ark. at 377, 989 S.W.2d at 912 (quoting *Freeman v. State*, 331 Ark. 130, 132, 959 S.W.2d 400, 401 (1998)). The test this court uses to determine if there was physical force is " 'whether the act was against the will of the party upon whom the act was committed.' " *Sublett*, 337 Ark. at 377, 989 S.W.2d at 912 (quoting *Freeman*, 331 Ark. at 133,

959 S.W.2d at 401). Furthermore, this court has continually held that a rape victim's testimony alone is sufficient and is substantial evidence to support a rape conviction. *See Martin,* 354 Ark. 289, 119 S.W.3d 504; *Sublett,* 337 Ark. 374, 989 S.W.2d 910. With this standard in mind, we now look to the present case.

In this case, S.A. testified that she was raped by a black male who came to her apartment door asking to use the telephone. She explained that he grabbed her around the throat, took her into the bedroom, and pushed her onto the floor. When she screamed for one of her neighbors, he told her to shut up and that he would kill her if she did not. It was at this time that the attacker forced her to have sex and oral sex with him. After the attack was over, he told her that if she called the police, he or one of his friends would come back and get her. Moreover, she stated that she was afraid he would kill her if she did not do as he said.

The events described by S.A. are more than sufficient to maintain the element of forcible compulsion. As this court has repeatedly held, the uncorroborated testimony of a rape victim alone is substantial evidence of guilt. In this case, S.A.'s testimony indicates that the acts occurred against her will. Consequently, Appellant's argument that there is insufficient evidence to support a finding of forcible compulsion necessary to sustain a rape conviction is without merit.

## II. Identity

Next, Appellant again claims that the trial court erred in denying his motion for directed verdict on all charges. In this instance, he argues that there was insufficient evidence as to the identity of the alleged attacker, thus mandating that the convictions be overturned. As noted above, this court has repeatedly held that motions for a directed verdict are treated as challenges to the sufficiency of the evidence. *Hall,* 361 Ark. 379, 206 S.W.3d 830; *Martin,* 354 Ark. 289, 119 S.W.3d 504; *Sublett,* 337 Ark. 374, 989 S.W.2d 910.

While Appellant claims that there was insufficient evidence as to the identity of the alleged attacker, he cited no authority which supports his contention but rather focuses on the person who made the identification. Appellant contends that since S.A. never identified him as the attacker *and* since Carter could not place Appellant in S.A.'s apartment, there is not sufficient evidence to support all of his convictions. Furthermore, Appellant attempts

to rationalize why and how his DNA was found in S.A.'s underwear and vagina. He explains that on December 23, 2002, the night before the attack, he and S.A. engaged in consensual sex and oral sex. Thus, according to Appellant, it was because of these consensual acts prior to the morning of the rape that his DNA was found by the rape exam performed by Nurse Farmer. Appellant's argument is without merit.

This court has consistently accepted DNA evidence as proof of guilt. *Engram*, 341 Ark. 196, 15 S.W.3d 678. Furthermore, "[w]hile the DNA evidence is substantial standing alone, it is undeniably sufficient when considered with the additional circumstantial evidence adduced at trial." *Id*. at 202, 15 S.W.3d at 681. In this case, the State produced DNA evidence identifying Appellant as the contributor of the sperm found in S.A.'s person and underwear. This alone is sufficient evidence identifying Appellant as the attacker.

Additionally, the State offered testimony linking Appellant to the vicinity in which the crimes occurred. Carter testified that about an hour or two before the rape, Appellant was suspiciously hanging around the Lynn Lane apartments. Carter testified that the following interaction between himself and Appellant took place:

Q. Okay. This individual started asking you questions?

A. Yes, ma'am

Q. And what did they ask you?

A. He asked me did I know where a white lady stayed at over here.

Q. Okay.

A. I told him no.

. . . .

A. And then he asked me again. This time when he asked me he pointed, and he pointed towards where she stayed at.

Q. And who are you referring to?

A. [S.A.]

Q. Okay. So, he's pointing to where she stays?

A. Yes, ma'am.

After this exchange, Carter entered his own apartment. Shortly thereafter, S.A. was raped.

■ After hearing police cars outside his window and learning from neighbors that S.A. was hurt, Carter approached the police and told them about a suspicious guy asking about her. Furthermore, he said he could identify this man if he saw him again. A few days later, Carter was shown Appellant's identification photo by Officer Pettit. Carter stated that the man in the photo was the man asking about S.A. Carter's identification places Appellant in the vicinity of the crime. This, coupled with the DNA evidence, is more than sufficient to support a finding that Appellant was the attacker. Thus, the trial court did not err in denying the motion for directed verdict.

### III. Suppression of Pretrial Identification

For his final point of appeal, Appellant argues that the trial court erred by denying his motion to suppress the pretrial identification of Appellant. Specifically, he argues that Carter's identification of him was a result of an unduly suggestive, police-orchestrated identification procedure. Nevertheless, we cannot examine Appellant's argument because it was not preserved for appellate review.

■ This court has held that a challenge to an out-of-court photographic identification is not preserved for review where, despite challenging the photo identification prior to trial, the appellant failed to object to the victim's in-court identification. *Lewis v. State*, 354 Ark. 359, 123 S.W.3d 891 (2003). Furthermore, "[t]o preserve a challenge to a pretrial photographic identification, we require a contemporaneous objection to in-court identification at trial." *Id.* at 363, 123 S.W.3d at 893. There, as here, the defendant made a motion to suppress the photo identification which was denied during a pretrial hearing. However, because Lewis did not object to the in-court identification at trial, this court found that the argument was procedurally barred. Similarly, in this case, Appellant did not object during the trial to Carter's testimony nor to Officer Pettit's testimony regarding the photo used for identification. Consequently, just as in *Lewis*, this point of appeal is procedurally barred.

■   Lastly, because this argument is barred from review, Appellant's constitutional arguments regarding the identification procedure are moot and we decline to address them. *See Lewis*, 354 Ark. 359, 123 S.W.3d 891.

### IV. 4-3(h) Review

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for adverse rulings objected to by the Appellant but not argued on appeal. No reversible errors were found.

Affirmed.