2009 Ark. App. 464

**Tommy HENSON, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1300.**

Court of Appeals of Arkansas.

June 3, 2009.

Debra J. Reece, Russellville, for appellant.

Dustin McDaniel, Att'y Gen., by: Jake H. Jones, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON HENRY, Judge.

A jury in Boone County found appellant Tommy Henson guilty of two counts of rape and one count of kidnapping as a class Y felony.[1] As a consequence, the trial court imposed cumulative sentences totaling seventeen years in prison. For reversal, appellant argues that the evidence is not sufficient to support his convictions for rape, his conviction for kidnapping, or his conviction of kidnapping as a class Y offense. Substantial evidence supports appellant's convictions. Therefore, we affirm.

The record reflects that appellant and C. Behayza, the victim, lived with one another at various times over the course of a ten-year period. During this time, Behayza gave birth to four children who were fathered by appellant. Behayza ended the relationship against appellant's wishes in January 2007. Appellant and Behayza maintained contact, primarily because appellant kept the children while Behayza was at work. Sometimes, appellant, Behayza, and the children did things together on the weekends.

Behayza testified that she did not have consensual sexual relations with appellant after he moved out of her home. In her testimony, she described two incidents in which appellant had sexual intercourse with her following their separation. She testified that the first incident transpired at her home in April 2007. After inspecting her phone bill, appellant formed the belief that Behayza was seeing another man, and an argument ensued. Behayza said that, in the presence of the children, appellant pushed her down the hallway, picked her up, and carried her into her bedroom. With the children screaming in the hallway, appellant locked the bedroom door and removed his clothing. Behayza testified that she tried to get away but that appellant pushed her down, took off her shorts, and engaged in sexual intercourse with her. Behayza said that, the entire time appellant was on top of her, she was kicking, pushing, and telling him that he should not be doing this. At some point, the children came into the bedroom after

---

1. The prosecuting attorney also charged appellant with another count of rape and an additional kidnapping charge, but the jury acquitted appellant of those offenses.

one child picked the lock on the door. Behayza urged one of the children to go next door to call the police. However, appellant, while naked, chased the children out of the room and told them that they would get in trouble if they called for help.

[3]Behayza further testified that, on July 26, 2007, appellant asked her for assistance in taking one of his vehicles to be repaired. She said that appellant became angry while they were driving in her vehicle because he thought that she had an alcoholic beverage in a cooler, which signified to him that she was dating another man. When they exited the vehicle, she locked it so appellant could not look inside the cooler, and appellant retrieved a tire iron from his truck and tried to pry open the back door of her vehicle. When that effort proved unsuccessful, appellant pulled his truck behind Behayza's vehicle. Appellant's anger escalated after Behayza told him to leave, and he began poking her in the chest with a hammer. Appellant then asked to go inside the house to get a drink of water. Behayza refused to let him in the house, but appellant snatched her purse and used the keys to gain entry. Once inside the home, appellant discovered that Behayza was preparing to move, and when he came back outside, he demanded the return of some furniture that he claimed belonged to him.

Behayza testified that appellant tossed her keys to her. When she moved toward her vehicle, appellant rushed at her. Behayza locked herself inside her vehicle and tried to leave the premises but could not do so because appellant's car and a basketball goal blocked her path. Appellant slashed a tire on Behayza's vehicle with his pocket knife, and he tried to break a car window with the tire iron. Behayza slightly rolled down her window, and appellant reached inside the vehicle and unlocked the door. He then grabbed her shirt and [4]rousted her out of the vehicle. Behayza said that appellant dragged her by the arm through the garage and into the kitchen. Because she was crying, Behayza used the pretense of retrieving a tissue, but she instead ran out of the house. Appellant caught her on the front porch, and although Behayza was holding onto a support beam, he jerked her away and forced her back inside the house into the kitchen, down the hallway, and into the bedroom. Behayza said that she tried to hold onto the door frames as he dragged her through the house but that appellant pried her loose from them. Once inside the bedroom, appellant took off his clothes, removed Behayza's clothes, and had sex with her. Behayza testified that she was hitting him and telling him to stop. The doorbell rang just after appellant completed the act. Behayza said that she grabbed her pants and shirt and "just took off." She said that appellant grabbed her arm and told her not to answer the door but that she "got loose" because he could not hold onto her and get dressed at the same time.

Behayza discovered a police officer at the door, and the officer placed appellant under arrest. Charles Christopher, Behayza's neighbor, had summoned the police. Christopher had heard appellant and Behayza arguing in the front yard, and he witnessed appellant trying to break the car window with a tire iron. He also saw appellant drag Behayza into the house. Christopher testified that Behayza looked frightened and was screaming for appellant to stop. During the investigation, officers found a button from Behayza's shirt near her vehicle and another button from her shirt in the bedroom. Semen collected from a rape kit [5]matched appellant's DNA. The officers also removed a pocket knife from appellant's person upon his arrest.

Shane Reese, a detective with the Harrison Police Department, interviewed appellant. During the interview, appellant and Reese mainly discussed the July 26 incident. Appellant related that he knew that Behayza did not want to have sex with him. He said that he "messed up" and knew that it was wrong. Appellant stated that Behayza "just laid there," and he did not recall her telling him to stop or her hitting him. He said that he did not know why he forced her to have sex or why he did not stop, except to say that he hoped that forcing her to have sex might rekindle their relationship. Appellant further acknowledged that the day he had sexual relations with Behayza in April involved the "same stuff" that occurred on July 26.

■ In this appeal, appellant challenges the sufficiency of the evidence with regard to his convictions for both rape and kidnapping. Although we will address appellant's arguments separately, the standard of review for each is the same. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence. *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004). Substantial evidence is evidence forceful enough to reach a conclusion one way or the other beyond suspicion or conjecture. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State, and only evidence supporting the verdict will be considered. *Moore, supra.*

■ We first consider appellant's argument concerning his convictions for rape. As pertinent here, a person commits rape if he engages in sexual intercourse with another person by forcible compulsion. Ark.Code Ann. § 5–14–103(a)(1) (Supp.2006). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark.Code Ann. § 5–14–101(2) (Repl.2006). The supreme court has defined the term "physical force" as any bodily impact, restraint or confinement, or the threat thereof. *Ellis v. State*, 364 Ark. 538, 222 S.W.3d 192 (2006). The test we use to determine if there was physical force is whether the act was against the will of the party upon whom the act was committed. *Goodman v. State*, 2009 Ark.App. 262, 306 S.W.3d 443.

■ Appellant argues that the evidence is not sufficient to support his convictions for rape because the State failed to prove the element of forcible compulsion. He maintains that the evidence is insufficient because he used no threats nor employed physical force when he had sexual intercourse with Behayza. We hold that substantial evidence supports appellant's convictions. The existence of forcible compulsion does not depend on the quantum of force that is applied, but rather on whether the act is consummated against the victim's will. *Johnson v. State*, 80 Ark.App. 79, 94 S.W.3d 344 (2002). Furthermore, this court has continually held that a rape victim's testimony alone constitutes substantial evidence to support a rape conviction. *Ellis, supra.* Here, Behayza testified that she did not consent to have sexual relations with appellant on either occasion, that she told him no, and that she hit him during both ordeals. Her testimony indicates that the acts occurred against her will. Therefore, substantial evidence exists to sustain the convictions for rape.

■ We next consider appellant's argument concerning his conviction for kidnapping. A person commits this offense if, without consent, the person restrains another person so as to interfere substantial-

ly with the other person's liberty for the purpose of engaging in sexual intercourse. Ark.Code Ann. § 5–11–102(a)(5) (Repl. 2006). Kidnapping is a class Y felony. Ark.Code Ann. § 5–11–102(b)(1). However, it is a class B felony if the defendant shows by a preponderance of the evidence that he voluntarily released the person restrained alive and in a safe place prior to trial. Ark.Code Ann. § 5–11–102(b)(2).

 "Restraint without consent" is defined as restraint by physical force, threat, or deception. Ark.Code Ann. § 5–11–101(3) (Supp.2007). In Arkansas, it is only when the restraint exceeds that normally incidental to the crime that the rapist should also be subject to prosecution for kidnapping. *See Summerlin v. State,* 296 Ark. 347, 756 S.W.2d 908 (1988).

Appellant asserts that he did not kidnap Behayza during the July 26 incident because he used only the restraint necessary to compel her to have sexual intercourse. We are not persuaded by appellant's argument. The record discloses that appellant disabled Behayza's vehicle, hoisted her out of the vehicle, and dragged her into the house. She attempted to escape by running outside, but appellant thwarted that attempt and forcibly pulled her back inside the house. While being dragged to the bedroom, Behayza tried to hang onto door frames, but appellant overcame those efforts as well. In light of these facts, substantial evidence supports the jury's determination that the restraint employed by appellant was not merely incidental to the rape.

 Appellant's final argument is that substantial evidence does not support his guilt of kidnapping as a class Y offense. He argues that he released Behayza alive and in a safe place, and thus was guilty of kidnapping as a class B felony. We also reject this argument because the evidence does not show that appellant "voluntarily

released" Behayza as contemplated by section 5–11–102(b)(2). On the contrary, the evidence shows that Behayza effectuated her own release by escaping from appellant's grasp. Appellant attempted to prevent Behayza from leaving the room, but he could not maintain his grip on her while simultaneously putting on his clothes. Under these circumstances, substantial evidence supports the jury's conclusion that appellant did not release Behayza and is thus guilty of kidnapping as a class Y felony. *See Wells v. State,* 303 Ark. 471, 798 S.W.2d 61 (1990) (holding that a kidnapping victim who escaped was not released in a safe place).

Affirmed.

PITTMAN and MARSHALL, JJ., agree.