2010 Ark. 197

**Daericko T. WITCHER, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–1131.**

Supreme Court of Arkansas.

April 29, 2010.

David W. Talley, Jr., Magnolia, for appellant.

Dustin McDaniel, Att'y Gen., by: Christian Harris, Ass't Att'y Gen., for appellee.

ELANA CUNNINGHAM WILLS, Justice.

Appellant Daericko Witcher was charged by felony information with rape on September 5, 2007. Following a bench trial in Columbia County Circuit Court on June 15, 2009, Witcher was convicted of rape and sentenced to life imprisonment. His sole point on appeal is a challenge to the sufficiency of the evidence.

A motion to dismiss in a bench trial is identical to a motion for a directed verdict in a jury trial in that it is a challenge to the sufficiency of the evidence. *Law v. State,* 375 Ark. 505, 292 S.W.3d 277 (2009). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, considering only the evidence supporting the verdict, to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Kelley v. State,* 375 Ark. 483, 292 S.W.3d 297 (2009). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *White v. State,* 367 Ark. 595, 242 S.W.3d 240 (2006).

Witcher was charged with rape pursuant to Arkansas Code Annotated section 5–14–103(a)(1) (Repl.2006), for engaging in sexual intercourse or deviate sexual activity by forcible compulsion. Sexual intercourse means "penetration, however slight, of the labia majora by a penis." Ark.Code Ann. § 5–14–101(10) (Repl.2006). Deviate sexual activity is defined as

any act of sexual gratification involving:

(A) the penetration, however slight, of the anus or mouth of one person by the penis of another person; or

(B) the penetration, however slight, of the labia majora or anus of one person by any body member or foreign instrument manipulated by another person.

Ark.Code Ann. § 5–14–101(1) (Repl.2006).

On appeal, Witcher argues that the evidence was insufficient to convict him because (1) the victim did not identify him in court, and (2) the only DNA results that matched his DNA sample to a scientific certainty came from the victim's rectal swabs, and the rape kit performed on the victim did not indicate any trauma to her rectum. His arguments are without merit.

At trial, the victim, who was nine years old at the time of the rape, testified that on the evening of August 25, 2007, she and her sister had gone to a friend's house to get their hair braided. The victim said that her sister's boyfriend was Daericko, whom she called Rico, and that on the night in question, "something bad" happened to her in his house. She said that Rico told her that he had to tell her something and pulled her into a bedroom, where she pulled off her clothing and put his "ding-a-ling" or his "private part" into her vagina. The victim stated that she did not want him to do it; that it hurt; and that she had no doubt that his "ding-a-ling" was inside of her because she could feel it.

A rape victim's testimony may constitute substantial evidence to sustain a conviction for rape, even when the victim is a child. *Kelley v. State, supra.* More particularly, this court has stated that the testimony of the victim that shows penetration is enough for conviction, even where that testimony is uncorroborated. *See Lamb v. State*, 372 Ark. 277, 275 S.W.3d 144 (2008); *Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995).

The victim's testimony alone thus constitutes substantial evidence of rape. The State introduced other evidence, however, including the testimony of the victim's mother. The mother testified that she and her daughters had gone to get the girls' hair braided at a house on Dempsey Street in Waldo. At some point late that evening, she could not find her youngest daughter, and someone pointed out a particular house. When she went inside, it was dark, but she heard a noise coming from a bedroom. She opened the door and felt for a light switch, and when she turned on the lights, she saw her daughter on the bed with her underwear down and Witcher with his pants down "coming up off of her." She stated that Witcher's pants were down over his ankles, and she could see his "privates." She exclaimed, "Rico!" and he said, "No, no, it's not like that." As she grabbed her daughter to leave, Witcher passed by her and "flew out the back door."

After getting the victim into the car, the victim's mother and her husband were able to flag down a police officer, who advised them to follow him to Magnolia Hospital. They arrived at the hospital perhaps thirty minutes after the rape occurred, and a rape kit examination was performed on the victim. Dr. Scott Brown, the emergency room physician on duty that night, testified that he performed a physical examination on the victim. As he obtained the victim's history, she stated, "he stuck his thing in my private parts a lot of times. He tried to kiss me on my mouth." She also said that he tried to kiss her on her private parts and "touched [her] privates with his hands." Dr. Brown stated that he found abrasions in the vaginal opening, proximal to the hymen; these abrasions were inside the vaginal vault, or within the labia. There was also a clear fluid on the labia. In conducting the rape examination, Dr. Brown took oral, vaginal, and rectal swabs from the victim; these were sent to the Arkansas State Crime Laboratory. Based on his examination of the victim and the abrasions found within her vaginal vault, Dr. Brown concluded that there had been sexual penetration that was consistent with rape.

Stacie Wassell, a forensic serologist with the Arkansas State Crime Laboratory, testified that she received the rape kit from the examination of the victim in this case. Wassell examined the smears and slides made from the oral, vaginal, and rectal swabs, as well as the victim's underwear. She stated that she confirmed the presence of spermatozoa on the underwear and on the vaginal and rectal swabs. She then took those swabs and sent them for forensic DNA analysis.

Mary Simonson, a forensic DNA examiner at the State Crime Lab, testified that she received the samples described above, along with oral swabs from Witcher. After conducting DNA analysis on these specimens, she determined that the DNA profile from the rectal swabs matched the DNA profile from Witcher's oral swabs, with the probability of selecting an individual at random from the general population having the same genetic markers being "approximately one in 6.3 times ten to the fourteenth" in the black population—or one in 6.3 quintillion. The DNA sample

from the vaginal swab was a mixture that was consistent with both the victim and Witcher, and only "one in 1.96 times ten to the sixth [one in 1.96 million] randomly chosen black individuals would be expected to be included as contributors to the observed DNA mixture."

On appeal, Witcher first argues that the evidence against him was insufficient to support his rape conviction because the victim did not identify him from the stand as the perpetrator of the rape. This court has noted that it is essential to every case that the defendant be shown as the one who committed the crime, and we have further held that an element to be proved in every case is that the person who stands before the court in the position of the defendant is the one whom the indictment or information accuses and to whom the evidence is supposed to relate. *Standridge v. State*, 357 Ark. 105, 113, 161 S.W.3d 815, 818 (2004). That connection, however, can be inferred from all the facts and circumstances that are in evidence. *Womack v. State*, 301 Ark. 193, 198–99, 783 S.W.2d 33, 36 (1990).

Here, the victim identified the perpetrator of the rape as Daericko, whom she called Rico. The victim's mother identified the defendant as the individual whom she caught with his pants down, standing over her daughter. Moreover, as discussed below, the DNA evidence conclusively linked Witcher to the victim. Thus, even though the victim did not identify Witcher from the stand, there was sufficient evidence of Witcher's identity as the perpetrator of the rape.

Next, Witcher argues that the DNA evidence failed to connect him conclusively to the rape. Mary Simonson testified that DNA is not considered to match to a "scientific certainty" unless the statistics show a likelihood of match that is greater than one in three hundred billion. Witcher argues that the only DNA match to exceed that degree of certainty was the DNA obtained from the rectal swab, but the medical evidence did not show that there was any trauma to the victim's rectum. Therefore, he contends, there is "sufficient doubt as to the conclusions of the Crime Lab technician concerning the DNA results to raise reasonable doubt as to [his] guilt."

Witcher's assertions are unavailing. Even accepting that a probability of one in 1.96 billion does not constitute a "scientific certainty," his argument ignores the fact that the victim testified that he vaginally raped her and the victim's mother positively identified him as the perpetrator. This court has repeatedly held that "while DNA evidence is substantial standing alone, it is undeniably sufficient when considered with the additional ... evidence adduced at trial." *Ellis v. State*, 364 Ark. 538, 543, 222 S.W.3d 192, 196 (2006) (citing *Engram v. State*, 341 Ark. 196, 15 S.W.3d 678 (2000)); *Whitfield v. State*, 346 Ark. 43, 56 S.W.3d 357 (2001). Here, the DNA evidence, coupled with the above-described testimony, was clearly sufficient to support Witcher's rape conviction.

Pursuant to Ark. Sup.Ct. R. 4–3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no prejudicial error has been found.