

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-17-39

| | | |
|---|---|---|
| KOREY RABION | APPELLANT | **Opinion Delivered:** October 18, 2017 |
| V. | | APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT [NO. 20CR-16-2] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ROBIN CARROLL, JUDGE |
| | | AFFIRMED |

## MIKE MURPHY, Judge

Korey Rabion appeals his August 10, 2016 convictions for two counts of negligent homicide, arguing that the Dallas County Circuit Court erred in denying his motion for a directed verdict based on insufficient evidence of his intoxication at the time of the accident. We affirm.

On November 1, 2015, Rabion was driving his car on Arkansas Highway 128 between Sparkman and Holly Springs when he swerved over the center line and caused a head-on collision with Edlon Thompson. Ashley Webb was a passenger in Thompson's car. Both Webb and Thompson died of injuries they sustained from the collision.

Allison Ramsey was driving toward Sparkman when she came upon the accident. She stopped to check on the occupants of the vehicles. She went to the first car, determined the driver and passenger were dead, and returned to her car to call 911. Daylight saving time was to end November 1, 2015, and she testified that, "with the time change," it was

between 1:00 and 1:20 in the morning.[1]  After she made the call, she heard a noise coming from the other car, which was flipped over in the ditch next to the road. A man she later identified as Rabion crawled out of the car, walked over to Ramsey, and asked her "what the fuck happened and where the fuck was he." She told him he'd been in a wreck in between Sparkman and Bearden. She testified that Rabion then "turned and started walking toward Bearden." Ramsey called 911 again to report her encounter with Rabion. Law enforcement arrived shortly thereafter and began to investigate.

Meanwhile, Devonte Smith, Rabion's stepnephew, had just dropped a relative off at home when he saw Rabion walk out of the woods. Smith testified that Rabion was walking as if he was in a lot of pain. Smith let Rabion in his car and Rabion immediately fell asleep, so Smith drove Rabion to Cindy Beck's house. Beck is Smith's mom and Rabion's stepsister. Smith helped Rabion in the house and onto the couch and Rabion fell back asleep.

Beck and Smith both testified that on the afternoon leading up to the wreck, Beck had been having a family get-together at her house. They both testified that they saw Rabion drinking beer that afternoon. From Beck's house, some of the adults had gone on to a nightclub. Beck testified that she saw Rabion there and at some point he had his head down on a table as if he were sleeping. Beck said that she and her friends left the nightclub sometime after Rabion did and started driving home toward Bearden along Highway 128. She came upon the accident after the police had cordoned off both lanes. An officer told

---

[1]The sheriff's office logged the call at 12:20 a.m., as it had turned its clocks back at midnight instead of 2:00 a.m.

her Rabion's identification had been found at the scene, and she turned around to return home on a different route. When Beck arrived home, she said that Rabion was still asleep on her couch. She woke him up and told him about the accident and how the police had found his identification at the scene. Rabion said he did not remember any accident. Beck called the police. Both Smith and Beck testified that they had not seen Rabion drink any time after the accident and before the police arrived.

Officials from the Dallas County Sheriff's Office arrived, placed Rabion under arrest, and transported him to their office. Once there, an officer administered a breath test to measure Rabion's blood-alcohol concentration. The test did not yield a usable sample, so Rabion was then transported to the Dallas County Medical Center for a blood test. At 5:10 a.m., Rabion's blood-alcohol concentration was .117. An accident-reconstruction officer with the Arkansas State Police testified that he investigated the accident and concluded that Rabion's car had crossed the center line and struck Thompson's vehicle head-on.

On January 12, 2016, the State filed a felony information charging Rabion with two counts of negligent homicide, failure to stop after an accident resulting in injury or death, driving with an invalid license, and driving while intoxicated. On May 23, 2016, the State filed an amended information to add a habitual-offender count.

Rabion's jury trial took place on August 8 and August 9, 2016. A jury found him guilty of each offense charged in the amended information and recommended a sentence of forty years' imprisonment and a fine of $10,000 for each count of negligent homicide, and a sentence of fifteen years' imprisonment and a fine of $10,000 for failing to stop after an accident resulting in injury or death.

The jury recommended that he serve the sentences consecutively, which resulted in a total of ninety-five years' imprisonment and fines totaling $30,000. The circuit court ordered that Rabion serve his sentences for driving with an invalid license and driving while intoxicated concurrently with his sentences for his felony convictions. The circuit court entered the sentencing order on August 10, 2016, and Rabion filed a timely notice of appeal on August 31, 2016.

Rabion first argues that the State did not prove beyond a reasonable doubt that he was intoxicated at the time of the accident, and thus the circuit court should have granted his motion for a directed verdict on the negligent-homicide charges. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Witcher v. State*, 2010 Ark. 197, at 1, 362 S.W.3d 321, 322. When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 221, 234 S.W.3d 310, 313 (2006). A conviction will be affirmed if substantial evidence exists in the record to support it. *Tillman v. State*, 364 Ark. 143, 146, 217 S.W.3d 772, 775 (2005). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id*.

Circumstantial evidence may provide a basis to support a conviction if it is consistent with the defendant's guilt and is inconsistent with any other reasonable conclusion. *Id*. Whether the evidence excludes every other hypothesis is a matter for the finder of fact to decide. *Id*. Witness credibility is also an issue for the finder of fact, who is free to believe all



or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

The statute under which Rabion was charged contemplates four separate scenarios that may constitute negligent homicide. The statute provides that "[a] person commits negligent homicide if he negligently causes the death of another person, not constituting murder or manslaughter, as a result of operating a vehicle" either while (A) intoxicated; (B) at the time of the accident having a blood or breath alcohol concentration greater than 0.08; (C) passing a stopped school bus; or (D) fatigued. Ark. Code Ann. § 5-10-105(a)(1)(A)– (D) (Repl. 2013).

Subsection (B)(ii) states that "the method of the chemical test of the person's blood, urine, saliva, breath, or other bodily substance shall be made in accordance with [sections] 5-65-204 and 5-65-206." Arkansas Code Annotated section 5-65-206 (Repl. 2016) regards admissibility rules for blood-alcohol tests taken within four hours of arrest:

> (a)(1) It is presumed at the trial of a person who is charged with a violation of § 5-65-103 that the person was not intoxicated if the alcohol concentration of the person's blood, urine, breath, or other bodily substance is four hundredths (0.04) or less by weight as shown by chemical analysis at the time of or within four (4) hours after the alleged offense.
>
> (2) A presumption does not exist if at the time of the alleged offense the person has an alcohol concentration of more than four hundredths (0.04) but less than eight hundredths (0.08) by weight of alcohol in the defendant's blood, urine, breath, or other bodily substance, although this fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.
>
> (b) The provisions of subsection (a) of this section shall not limit the introduction of other relevant evidence offered to show whether or not the defendant was intoxicated.

Rabion argues that because there were no officers to give him a field-sobriety test or a blood/breath test at the time of the accident, and because the blood sample was not given until 5:10 a.m. (over four hours after the alleged offense), the State cannot prove that he was intoxicated at the time of the accident. Rabion's argument, however, ignores that other evidence of intoxication may be admitted and considered by the fact-finder.

As defined in the negligent homicide statute, "intoxication"

means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination of alcohol, a controlled substance, or an intoxicant to such a degree that the operator's reactions, motor skills, and judgment are substantially altered and the operator therefore constitutes a clear and substantial danger of physical injury or death to himself or herself or to another person.

Ark. Code Ann. § 5-10-105(c)(2). And here, we have evidence that Rabion was drinking before the accident, testimony from Ramsey that very shortly after the accident "you could smell alcohol on him. He really did [reek] of alcohol. He was kind of waddling, you know, staggery." Officer Cartwright testified that he could smell alcohol coming from Rabion's overturned vehicle and that when he arrived at Beck's house he could smell the alcohol coming from Rabion when he walked in the door. Another officer, Ryan Coleman, testified that Rabion appeared to be impaired when they arrived at Beck's house and that Rabion had bloodshot eyes. When viewed in the light most favorable to the State, this evidence is sufficient to support the conviction.

Rabion next suggests the evidence was insufficient because the driver of the other car could have been the cause of the accident. He points to evidence that indicated Thompson had been drinking earlier that night (he had a blood-alcohol concentration of 0.038) and that Thompson was possibly distracted. This argument is not preserved for our

review because the directed-verdict motion did not include alternative causes of the accident. *Savage v. State*, 2017 Ark. App. 261, at 4, 520 S.W.3d 706, 709. Nonetheless, we hasten to add that Thompson's blood-alcohol concentration was well under the legal 0.08 limit, and the accident-reconstruction expert for the Arkansas State Police provided ample testimony as to how he concluded Rabion caused the accident and from which the jury could conclude the same.

Affirmed.

VIRDEN and GLOVER, JJ., agree.

*Terrence Cain* and *Jimmy C. Morris, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.