Julius SILVERMAN *v.* STATE of Arkansas

CA CR 98-52                                    974 S.W.2d 484

Court of Appeals of Arkansas
Division II
Opinion delivered September 23, 1998

*Maxie G. Kizer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

TERRY CRABTREE, Judge. Julius Silverman brings the present appeal, a challenge to the sufficiency of the evidence, from a Jefferson County Circuit Court jury trial convicting him of rape. For his points on appeal, Silverman presents two main arguments: first, appellant challenges the reliability of the State's conclusions as drawn from the DNA results; and second, appellant challenges the method and timeliness of the eyewitness identification used by the State. Finding no merit in these contentions, we affirm the conviction of the trial court.

In October of 1995 the victim was employed as a nurse at the Tucker Women's Unit under the Department of Correction. For commuting convenience, the victim had moved in with a friend at the Bachelor Officers' Quarters (BOQ), a dormitory-type residence for employees of the prison. At approximately 6:30 a.m., on October 6, 1995, the victim left the dormitory to drive her roommate to Pine Bluff. Upon returning alone to the BOQ some time around 7:30 a.m., the victim saw appellant, an inmate, relaxing in the lobby area. The victim began a conversation with appellant, during which, he revealed his name and reasons for his presence at the BOQ.[1] The victim asked appellant to attend to the ventilation problems she was having in her room and remained in the lobby while he checked. After appellant returned and disclosed the absence of any noticeable irregularities, the victim went to her room, undressed, and began smoking cigarettes. The victim testified that she also checked the lobby and parking lot and, upon not seeing anyone, began to shower.

The victim further testified that an intruder then entered her unlocked dorm room, reached into, and pulled her out of the running shower. The intruder managed to cover his face and force the victim onto her roommate's bed where he then penetrated her vagina with his penis. While the victim did not appear

---

[1] Appellant was an inmate of Tucker prison who had earned the privilege of working maintenance at the BOQ with limited supervision.

to form a positive identification of the assailant during the attack, she was able to see his profile and ascertain that he was a black male, taller than she.

After the attack and upon the assailant leaving, the victim dressed and drove herself to the Tucker prison to report what she thought to be an attempted rape.[2] There, she told the investigators that the perpetrator's shirt would be wet since he had pulled her out of the shower. Although the victim did not immediately label appellant as the rapist, she did so during subsequent interviewing with the authorities. The ensuing investigation uncovered a wet Department of Correction guard shirt in one of the BOQ rooms and a pair of wet boxers and wet towels behind the commode in Silverman's cell.

The victim was later shown a photo lineup from which to attempt to identify the assailant. Though Silverman's picture was among those she reviewed, the victim was unable to make a positive identification. A year later, during an in-person lineup, the victim identified appellant as the rapist.

At trial, DNA evidence was presented by the State in an attempt to link the appellant to the crime. Both Silverman and the State presented expert testimony on the DNA testing procedures and the resulting conclusions. Although the experts differed as to the weight and accuracy to be accorded the results, both experts agreed that the appellant could not be ruled out as the attacker.

At the close of the State's case-in-chief, appellant moved for a directed verdict. The motion was denied. The jury found the appellant guilty of rape and sentenced him to ten years in the Arkansas Department of Correction to run concurrently with any sentence the appellant was serving. Appellant challenges both the trial court's denial of the motion for a directed verdict and the subsequent conviction of rape.

---

[2] The victim originally contemplated the attack to be only an attempted rape since she believed that the attacker had failed to maintain an erection or ejaculate.

■ We treat the denial of motions for a directed verdict as a challenge to the sufficiency of the evidence. *Johnson v. State,* 326 Ark. 3, 929 S.W.2d 707 (1996). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. *Dixon v. State,* 310 Ark. 460, 839 S.W.2d 173 (1992). In order for circumstantial evidence to be sufficient, it must exclude every other hypothesis consistent with innocence. *Davis v. State,* 317 Ark. 592, 879 S.W.2d 439 (1994). Such a determination is a question of fact for the factfinder to determine. *Sheridan v. State,* 313 Ark. 23, 852 S.W.2d 772 (1993). Finally, when reviewing the sufficiency of the evidence, it is only necessary for an appellate court to ascertain that evidence which is most favorable to appellee, and it is permissible to consider only that evidence which supports the guilty verdict. *Johnson, supra* (citations omitted).

For his first point, appellant attacks the reliability of the DNA results and their concomitant statistical probabilities. Silverman argues that the testing procedure, used by the State in this case, was unreliable since the underlying DNA samples were mixed. At trial, Silverman presented a DNA expert who had reviewed the State's results and testified that the State's deductions were not entirely consistent with the test results. Silverman also presented lab results from a independent DNA laboratory to reveal inconsistencies with the State's sampling and conclusions. Specifically, appellant challenged the statistical probabilities offered by the State as they related to the results drawn from the tests. While appellant presented evidence at trial bearing on the reliability of the DNA evidence, on appeal, appellant fails to cite any legal authority supporting his position that this evidence is now insufficient.

■ Reconciling conflicts in the testimony and weighing the evidence are matters within the exclusive province of the jury and the jury's conclusion on credibility is binding on this court. *Ashley v. State,* 22 Ark. App. 73, 732 S.W.2d 872 (1987). Jurors are allowed to draw upon their common knowledge and experience in reaching a verdict from the facts directly proved. *Id.*

■ In *Moore v. State,* 323 Ark. 529, 547, 915 S.W.2d 284, 294 (1996), the Arkansas Supreme Court determined that DNA evidence was no longer 'novel scientific evidence' and therefore not subject to the preliminary hearing called for in *Prater v. State,*

307 Ark. 180, 820 S.W.2d 429 (1991). While, in cases involving DNA evidence, the trial court must still make a preliminary inquiry into the reliability of the expert's methodology, appellant does not raise this issue on appeal nor mention whether such a preliminary inquiry was in fact ever held. Instead, it appears, appellant chose to challenge the reliability of testing at trial. In *Moore*, the court upheld the trial court's determination that:

> any challenge to the conclusions reached by the state's expert, including statistical probability of whether the test results constituted a match, would appropriately be made at trial, by cross-examination of the state's experts and presentation by the defendant of his own experts to express differing opinions about the results of the [DNA] tests and statistical probability of a match.

323 Ark. at 547, 915 S.W.2d at 294.

■ Here, appellant had ample opportunity to present expert testimony challenging the State's DNA conclusions, as well as sufficient liberty to cross-examine the State's experts. In *Johnson v. State*, 326 Ark. 430, 447, 934 S.W.2d 179, 187 (1996), our supreme court refused to revisit issues concerning the battle of experts over statistical probabilities since they were matters for litigation and cross-examination. So, too, do we decline that invitation. The conflicting testimony of experts was for the jury to consider, and we cannot now say that the jury's conclusion of guilt was not supported by the evidence.

■ For appellant's second point on appeal, Silverman challenges the method of lineup identification used by the victim in naming the appellant as the attacker. Again, appellant fails to provide this Court with any legal precedent supporting his argument that this method of identification is insufficient to sustain a conviction. Though the victim did not pick appellant out of a lineup until approximately one year after the rape and though the victim stated that her attacker had to be appellant because he was the only person she saw prior to the attack, these arguments are matters of credibility and weight to be afforded the evidence — matters within the province of the jury.

Affirmed.

MEADS and ROAF, JJ., agree.