Christopher McBRIDE *v.* STATE of Arkansas

CA CR 06-1158                                        257 S.W.3d 914

Court of Appeals of Arkansas
Opinion delivered May 30, 2007

---

*Mark D. Leverett*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

L ARRY D. VAUGHT, Judge. Christopher McBride was convicted of three counts of second-degree unlawful discharge of a firearm from a vehicle and was sentenced to three separate terms of ten years' imprisonment, to run concurrently. On appeal, McBride contends that there was insufficient evidence to support the convictions and that the jury failed to follow the trial court's instructions regarding the burden of proof. We disagree with both points and affirm.

McBride first argues that there is insufficient evidence to support the convictions. When reviewing a challenge to the sufficiency of the evidence we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *O'Neal v. State*, 356 Ark. 674, 158 S.W.3d 175 (2004); *Baughman v. State*, 353 Ark. 1, 110 S.W.3d 740 (2003). The conviction will be affirmed if there is substantial evidence to support it. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*

McBride was convicted of three counts of unlawful discharge of a firearm from a vehicle pursuant to Arkansas Code Annotated section 5-74-107(b)(1) (Repl. 2005), which provides:

> A person commits unlawful discharge of a firearm from a vehicle in the second degree if he or she recklessly discharges a firearm from a vehicle in a manner that creates a substantial risk of physical injury to another person or property damage to a home, residence, or other occupiable structure.

The following is a summary of the evidence, presented in the light most favorable to the State.

On June 3, 2005, a shooting incident occurred at a combination Shell gas station/Subway restaurant located at Fourche Dam Pike. Natasha Nichols, an employee of Subway, testified that around 11:45 p.m. she served sandwiches to two customers, KP and Latrell, who thereafter went outside. While outside, KP began arguing with McBride. As KP and McBride argued, each pulled out a gun and pointed them at each other. Latrell and KP then got into a red Chevy Caprice and pulled out of the Shell parking lot, while McBride got into a black SUV and followed them. The red vehicle quickly returned to the Shell parking lot with the black SUV still following. Next, Nichols saw gunfire coming from the vehicles. She testified that she actually saw "the defendant shoot

out of his Jeep window. He was shooting at the red car." She testified that "the gun was in the defendant's hand outside the truck" and that "the defendant's bullets were coming towards the store because his gun was pointed towards the store." Nichols was "positive about who was shooting at the store" and testified "that at least some of this defendant's shots hit the store."

Cora Shelton, an employee of the Shell station, testified to substantially the same cascade of events as did Nichols. She recalled seeing "sparks coming from a gun . . . coming from the [black] vehicle as the vehicle was going by." She further testified that she "saw the fire coming from the gun, after the Caprice pulled away. The gun was in the black Denali." Finally, she testified, "So either the ice chest or the store [was] hit as soon as I saw those sparks from the Denali."

A third witness to the shooting incident, Will Hemenway, testified that on June 3, 2005, he was getting gas at the Exxon gas station across the street from the Shell station when he heard gun shots and saw gunfire from a black SUV headed toward the Shell station. He returned to his vehicle and pursued the black SUV on the interstate. He contacted 911 and the Arkansas State Police, advised them of his location, and provided a partial license plate number of the black SUV. Hemenway discontinued his pursuit when the black SUV exited onto Roosevelt.

Little Rock Police Department Officers Chris Bonds and Michael Ford testified that while on patrol, they received information regarding a black SUV and were able to locate it within minutes. As they followed the black SUV, they observed the vehicle pull over at a gas station on Roosevelt and a gun being thrown out its window. The black SUV then left the gas station, at which time Bonds and Ford pulled it over. They testified that McBride was the driver of the black SUV and that there were no other passengers in the vehicle. When McBride exited the vehicle, a shell casing fell out of his lap onto the ground. McBride was placed into custody at approximately 11:58 p.m.

After McBride was arrested, Little Rock Police Officer Joe Hill was advised by Bonds and Ford that McBride threw a gun out of his vehicle at a gas station on Roosevelt. Officer Hill found the gun at that location.

Reuben Linder, Jr., employed with the Arkansas State Crime Laboratory as a firearms and tool mark examiner, testified that several items of evidence were submitted to him for review, including the gun-shell casing that fell out of McBride's lap when

he was arrested. Linder testified that the gun-shell casing was a definite match with McBride's gun.

█ We hold that this evidence overwhelmingly supports the convictions in this case. Nichols testified that she saw McBride shooting toward the gas station while Shelton and Hemenway testified that they witnessed gunfire from the black SUV toward the gas station. While Shelton and Hemenway did not actually see McBride shooting the gun from the black SUV, there is substantial evidence that McBride was the only person in the SUV at the time of the shooting. Not one witness at the gas station testified that they saw another individual in the black SUV. Hemenway pursued McBride from the gas station until just a couple of minutes before McBride was arrested and Hemenway testified that he only saw one person in the vehicle. When McBride was arrested, the black SUV was searched, no other individual was found, and a gun-shell casing (that matched the gun that McBride threw out of the window of his vehicle) fell out of his lap. All of this evidence supports the conclusion that McBride was the person who shot a gun from his vehicle towards the Shell station.

We note that McBride's girlfriend testified that she was with McBride at the gas station, and he never fired a gun that night. Clearly, the jury did not believe her testimony. Reconciling conflicts in the testimony and weighing the evidence are matters within the exclusive province of the jury and the jury's conclusion on credibility is binding on this court. *Silverman v. State*, 63 Ark. App. 94, 974 S.W.2d 484 (1998) (citing *Ashley v. State*, 22 Ark. App. 73, 732 S.W.2d 872 (1987)). Accordingly, we hold that substantial evidence supports the convictions, and we affirm on that issue.

McBride's second point on appeal is that the trial court erred in denying his motion for new trial because the jury was confused as to the trial court's instructions. The confusion, according to McBride, came to light when the jury sent two questions to the judge during jury deliberations. The question at issue was:

> Please elaborate on the three counts we are deciding on. Are we to decide that he actually shot the gun, or are we to decide that he endangered the three people inside the Shell?[1]

---

[1] The second question was: "Also, may we have a map of the area?" In response, a map used at trial as a demonstrative aid was provided to the jury. This question and the response are not pertinent to this appeal.

The State first contends that our court lacks jurisdiction to review this point because McBride appealed only from the judgment and commitment order and failed to specifically state in the notice that he was appealing from an order denying the new-trial motion. According to the State, McBride should have filed an amended notice stating that he was appealing from the order denying his motion. The State cites *Wright v. State*, where our supreme court stated that "a notice of appeal must designate the judgment or order appealed from, and be filed within thirty days of that order." 359 Ark. 418, 423, 198 S.W.3d 537, 540 (2004) (citations omitted).

The judgment and commitment order was filed on January 23, 2006. On February 21, 2006, McBride filed a timely motion for new trial. The trial court took no action on the motion, and thirty days later, on March 23, 2006, it was deemed denied. *See* Ark. R. Crim. P. 33.3(c) (2006). McBride filed his notice of appeal on April 21, 2006, which stated:

> Notice is hereby given that, Christopher McBride, defendant appeals to the Arkansas Court of Appeals from the judgment of the Pulaski County Circuit Court, Sixth Division, entered January 23, 2006. The defendant's Motion for New Trial was denied on March 21, 2006.[2]

We acknowledge that McBride did not specify that he was appealing from an order denying his motion for new trial; however, he did state the (incorrect) date that his motion for new trial was denied. Because the motion was deemed denied, there was no document actually entered that could be identified in the notice of appeal. Finally, *Wright* is distinguishable from this case because there, the defendant filed a notice of appeal after the judgment and commitment order was entered *but before* filing his motion for new trial. In that case, because there was a notice filed before disposition of the post-judgment motion, Rule (2)(b)(2) of the Arkansas Rules of Appellate Procedure – Criminal applied. That Rule requires that an amended notice be filed if a party seeks to appeal from the grant or denial of the post-trial motion.

Because McBride filed his notice of appeal after *both* the judgment and commitment order and new-trial motion were

---

[2] McBride incorrectly stated the date his motion was denied. As noted above, the motion was deemed denied on March 23, 2006.

filed, Rule (2)(b)(2) (and its requirement of an amended notice) is not applicable. Instead, Rule (2)(b)(1) applies, which requires a notice of appeal to be filed within thirty days from the date the post-trial motion was filed where the trial court neither grants or denies that motion. *See* Ark. R. App. P.–Crim. (2)(b)(1). McBride's notice was filed within thirty days of the filing of his post-trial motion on which the trial court made no ruling, and it sufficiently identified the trial court's deemed denial of his post-trial motion. Therefore, he was in compliance with Rule (2)(b)(1), and no amended notice was required. Although the better practice is to clearly identify the ruling that the party seeks to appeal, under the facts of this case we hold that McBride properly appealed from the judgment and commitment order and the denial of his motion for new trial.

As to the merits of his second point on appeal, McBride relies solely upon the post-trial statement of juror Shasta Dockery, which provided in pertinent part:

> We were confused as to whether Mr. McBride's conviction was decided by if he just fired a gun in a public place or if he actually fired at the attendants and customer inside. Did we all think he fired the gun? Yes. Did we think he intended to do bodily harm to the other two men involved? Yes. Did we think he was the one who shot into the store? We had no evidence to say that it was Mr. McBride or the other men involved who shot into the store. . . . I do believe that Mr. McBride shot into that store, but that is not the same thing as knowing. . . .

The State contends that the juror's statement is inadmissible pursuant to Rule 606(b) of the Arkansas Rules of Evidence, which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to asset [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The purpose of Rule 606(b) is to attempt to balance the freedom of the secrecy of jury deliberations with the ability to correct an irregularity in the jury's decisions. *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999).

The juror's statement falls squarely within the type of testimony prohibited by Rule 606(b). The statement is essentially a characterization of the jury deliberations. The statement does not include any allegations that prejudicial information was given to the jury or that the jury was influenced by outside sources. Because the juror's statement is inadmissible, McBride failed to show that he was entitled to a new trial based on jury confusion.

Affirmed.

MARSHALL and HEFFLEY, JJ., agree.