

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-16-838

|  |  |
|---|---|
| | **Opinion Delivered** April 26, 2017 |
| CHARLES SAVAGE, JR. | APPEAL FROM THE ASHLEY |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 02CR-15-76] |
| V. | |
| | HONORABLE SAM POPE, |
| | JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

Charles Savage, Jr., appeals his conviction by an Ashley County jury of theft of property and criminal mischief in the first degree. On appeal, Savage challenges the sufficiency of the evidence supporting his theft-of-property conviction, and he argues that the verdict form indicates that he was erroneously convicted of, and sentenced for, theft by receiving when he had been charged with theft of property. We affirm on both points.

At trial, Amondo Mondragon testified that he was employed as the manager of Larry Pieroni Farms. Mondragon testified that, on January 22, 2015,[1] while making routine rounds inspecting the fields, he discovered that an agricultural pivot[2] had been damaged and pieces were missing. He immediately called Larry Pieroni, his direct supervisor, and Pieroni instructed

---

[1]Mondragon was not certain about the date but testified that "if the police say it was the 22nd that I called them, then I would have to agree with that."

[2]An agricultural pivot, sometimes also called a waterwheel, is a device used to irrigate crops.

SLIP OPINION

Mondragon to call the sheriff's office. Officer Daniel Watson then conducted an investigation and determined that the copper wire running the length of the pivot had been cut and removed. Watson also discovered four-wheeler tracks and footprints near the pivot.

The four-wheeler tracks stretched across the field from the pivot to the pavement in front of Savage's home. There were also four-wheeler tracks in Savage's yard leading to an enclosed shed. When police asked Savage if he owned a four-wheeler, he initially only showed them the two in the yard (which did not match the tracks), but eventually another four-wheeler was discovered in the shed that did match the tracks. Savage then explained that he had forgotten about this four-wheeler because it would not run, but when asked to demonstrate that it would not start, he intentionally shifted it into gear before attempting to turn the key, thereby preventing it from starting. When an officer shifted it back to neutral, the four-wheeler started without any problem. Savage then claimed that, although it would start, it would not continue to run, but when the officers tried to leave it running to test that statement, Savage turned it off. The tread on the four-wheeler's tires matched the tracks going to the pivot.

Officers then searched his property with his consent and found rust residue in the trunk of his vehicle. This rust residue was similar to residue from the wires on the pivot. Officers also found seven spots on the ground around his home that showed signs of having a heavy, rolled-up object on top of them. Seven pieces of wire were taken from the pivot.

Savage, who regularly scraps metal for income, was asked by officers if he had recently sold any copper to Livingston's Scrap Metal, and he said he had not. However, both a receipt and video surveillance demonstrated that Savage had recently sold approximately 259 pounds of copper at Livingston's. Savage acknowledged lying to the officers but claimed that he did

so because an officer had accused him of selling drugs, which angered him.[3] Savage also claimed that he had received some scrap wire from the mayor but that after burning it in his yard, it was stolen. Savage was arrested and charged with the theft of the copper wire; after being arrested, Savage told his parole officer that he (Savage) had "f'ed up."

Savage was convicted on both counts submitted to the jury. The preprinted verdict form signed by the jury erroneously stated that he had been found guilty of "theft by receiving," although he had been charged with theft of property, and the jury had been instructed on theft of property. At no other time during the trial was theft by receiving mentioned. Neither the State nor the defense raised any objection to the verdict form either before or after it was submitted to the jury. The judge read the verdict in open court, stating that Savage was found guilty of "theft." The jury was polled and indicated that was their verdict.

Savage filed a timely notice of appeal. On appeal, he argues that the evidence against him was insufficient to support a conviction for theft of property[4] and that he had been erroneously convicted and sentenced for theft by receiving, for which he was not charged.

At trial, Savage moved for a directed verdict, arguing that the theft-of-property statute, Arkansas Code Annotated section 5-36-103(a)(1) (Repl. 2013), required proof that he had exercised unauthorized control over the property of another and the State had not proved who owned the pivot from which the wire had been stolen. He argued that the State had not

---

[3]The evidence reveals that the officer did not mention drugs until after Savage denied having recently sold scrap metal at Livingston's.

[4]Savage's appellate brief does not provide any argument challenging the sufficiency of the evidence against him on the criminal-mischief charge.

put on any evidence that Savage did not own it. On appeal, Savage broadens his sufficiency argument to include a challenge to the State's proof that he was the person who took the wire. However, an appellant may not expand or enlarge the grounds for a directed-verdict motion when arguing the issue on appeal. *Armstrong v. State*, 2011 Ark. App. 530, at 4. Savage's sufficiency-of-the-evidence argument is bound by the scope of the directed-verdict motion made at trial, as all other arguments were not preserved for appellate review. *Id.* Therefore, the only sufficiency challenge before us is whether the State presented adequate proof that the agricultural pivot did not belong to Savage and that his taking of the wire was unauthorized.

When we review a challenge to the sufficiency of the evidence, we "view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict." *McBride v. State*, 99 Ark. App. 146, 148, 257 S.W.3d 914, 916 (2007). The test is whether the verdict is supported by substantial evidence, direct or circumstantial. *Stewart v. State*, 362 Ark. 400, 403, 208 S.W.3d 768, 770 (2005).

We are satisfied that the State sufficiently proved that Savage exercised unauthorized control over the pivot, which was the property of another. There was ample evidence at trial that the pivot was in the possession, control, and use of Larry Pieroni Farms when the wires were stolen. Mondragon testified that he managed the daily operations of the farm and reported directly to Pieroni. He discovered the damaged pivot on making a routine inspection of the property and immediately reported it to Pieroni (indicating that Mondragon, the farm manager, neither expected the wire to be removed nor understood the removal to have been authorized), and Pieroni told him to call the sheriff's office (indicating that Pieroni also did not view the wire removal as having been authorized). Mondragon also testified that he "called

people to fix the pivot." The fact that Larry Pieroni Farms immediately undertook the expense of repairing the pivot further indicates that it owned and operated the pivot, needed it to be in working order, and had not intended it to be rendered unusable by removal of the copper wiring. Finally, Savage testified at trial that he did not know the location of the field where the pivot had been when the wires were stolen, indicating that he neither owned the pivot nor exercised authorized control. Based on the totality of the evidence presented at trial, viewed in the light most favorable to the State, we hold that there was substantial evidence to support Savage's conviction for theft of property.

Savage also claims that he was erroneously convicted of, and sentenced for, theft by receiving, despite the fact that he was actually charged with theft of property. The preprinted jury verdict form, signed by the jury, erroneously states "theft by receiving" rather than "theft of property." However, Savage never objected to the use of the verdict form at trial. It is well-settled law that a party cannot challenge a verdict form on appeal unless he or she raised the issue at trial. *E.g.*, *Bonds v. State*, 310 Ark. 541, 546, 837 S.W.2d 881, 884 (1992). In *Adams v. State*, the Arkansas Supreme Court stated that "the failure to make a contemporaneous objection to an irregularity of a jury verdict constitutes a waiver of the irregularity." 2009 Ark. 375, at 6, 326 S.W.3d 764, 768. Although our courts have recognized that an objection to a verdict form may be raised at the time the verdict is rendered, at the time of sentencing, or by motion for a new trial, *Ply v. State*, 270 Ark. 554, 560, 606 S.W.2d 556, 559 (1980), Savage never raised the issue below.

Moreover, while it is true that the jury's verdict form for the guilt phase of the trial erroneously stated "theft by receiving," the circumstances as a whole reveal that this was clearly

a clerical error and that Savage was convicted of, and sentenced for, the crime of theft of property. At no other point in the trial was "theft by receiving" mentioned. Savage was charged with theft of property, the closing arguments and jury instructions clearly addressed the elements of theft of property, the jury signed a sentencing-phase verdict form that stated they had convicted Savage of theft of property, and the defense polled the jury, confirming that every member had in fact reached that verdict. Based on the charges, the evidence, the jury instructions, the sentencing phase verdict form, and the polling of the jury, the totality of the circumstances in this case clearly indicates that the minor clerical error on the guilt-phase verdict form did not confuse or mislead the jury. *Curtis v. State*, 279 Ark. 64, 67, 648 S.W.2d 487, 489 (1983). We affirm.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*John F. Gibson, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.